FILED

2014 Feb-18  PM 02:13
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DAVID L. FLANIGAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action Number** |
| | ) | **2:13-cv-0773-AKK** |
| **INDEPENDENT BANK, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Independent Bank moved to stay this case and to compel

arbitration. Doc. 13. Thereafter, Plaintiff David L. Flanigan moved for leave to

amend his complaint.[1] Doc. 24. Independent Bank's motions are fully briefed and

---

[1] The decision whether to grant leave to amend a complaint is within the sole discretion of the district court. *Laurie v. Alabama Ct. of Crim. App.,* 256 F.3d 1266, 1274 (11th Cir. 2001). However, Rule 15(a) tempers the court's discretion by directing that "leave shall be freely given when justice so requires." *Bryant v. Dupree,* 252 F.3d 1161, 1163 (11th Cir. 2001); Fed. R. Civ. P. 15(a). The Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Thus, the court must have a substantial reason to deny a motion to amend. *Laurie,* 256 F.3d at 1274. Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment" *Foman,* 371 U.S. at 182; *see also Hargett v. Valley Fed. Savings Bank,* 60 F.3d 754, 761 (11th Cir. 1995). The court finds that no substantial reasons exist here to justify denying Flanigan's motion to amend. Therefore, the court **GRANTS** Flanigan's motion to amend his complaint.

ripe for review.  Docs. 21-23, 25.  For the reasons outlined below, Independent

Bank's motions are **GRANTED**.

## I.  APPLICABLE LEGAL STANDARD

Pursuant to the Federal Arbitration Act ("FAA"), a written arbitration

provision in a "contract evidencing a transaction involving [interstate] commerce"

is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA evinces a

"liberal federal policy favoring arbitration agreements."  *Hill v. Rent–A–Center,*

*Inc.,* 398 F.3d 1286, 1288 (11th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v.*

*Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983)); *see also Picard v. Credit Solutions,*

*Inc.,* 564 F.3d 1249, 1253 (11th Cir. 2009) ("The FAA creates a strong federal

policy in favor of arbitration."). "[A]ny doubts concerning the scope of arbitrable

issues should be resolved in favor of arbitration." *Moses H. Cone,* 460 U.S. at

24–25.

Where a contract contains an arbitration clause, "there is a presumption of

arbitrability in the sense that '[a]n order to arbitrate the particular grievance should

not be denied unless it may be said with positive assurance that the arbitration

clause is not susceptible of an interpretation that covers the asserted dispute.

Doubts should be resolved in favor of coverage.'" *AT & T Tech. Inc. v. Commc'ns*

*Workers of Am.,* 475 U.S. 643, 651 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582–83 (1960)). Arbitration is, however, a matter of contract; thus, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am.,* 363 U.S. at 582. Ultimately, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quoting *AT & T Tech. Inc.,* 475 U.S. at 649). In determining which claims are arbitrable, the court looks to the intent of the parties, and in so doing, gives full effect to all provisions in the contract. *Redmon v. Soc.'y & Corp. of Lloyds,* 434 F. Supp. 2d 1211, 1218 (M.D. Ala. 2006) (citing *Bullock v. United Benefit Life Ins. Co.,* 165 F. Supp. 2d 1259, 1261 (M.D. Ala. 2001)).

## II.   PROCEDURAL HISTORY AND FACTUAL BACKGROUND

In December 2006, Flanigan entered into a loan agreement with Independent Bank for the purchase of a vehicle, and alleges he paid the loan in full in April 2012. Doc. 6 at 2 ¶¶ 5, 6.  Nonetheless, around April 2012, Independent Bank began "harassing and intimidating [Flanigan] by sending him letters inaccurately

3

claiming his vehicle loan was delinquent when it had been completely paid off by [Flanigan]." *Id*. at 2 ¶ 7.  In stark contrast, Independent Bank contends Flanigan failed to make all payments due on the loan.[2]  Doc. 13-1 at 1 ¶ 5.

After receiving the delinquency letters, Flanigan contacted Independent Bank to dispute the delinquency and to request the payment history for his loan. Doc. 6 at 2 ¶ 8.  Independent Bank failed to provide the payment history and allegedly continued sending Flanigan threatening letters.  *Id*. at 2 ¶ 9.  During this same time, Flanigan checked his credit reports and discovered that Independent Bank had reported the alleged delinquency of the loan to Trans Union and Equifax. *Id*. at 2 ¶ 10.  Flanigan subsequently contacted Trans Union and Equifax to dispute the accuracy of the Independent Bank report and requested a reinvestigation into the loan.  *Id*. at 2–3 ¶ 11.  Flanigan alleges that Independent Bank "illegally, wrongfully, and inaccurately verified its inaccurate information pertaining to [Flanigan]'s account with it with Defendants [Trans Union] and Equifax."  *Id*. at 3 ¶ 12 (alterations added).  As a result, Trans Union and Equifax did not remove the delinquent account from Flanigan's credit reports.  *Id*. at 4 ¶¶ 23–24.  Flanigan sent

---

[2]The court notes that Independent Bank contradicts itself in its brief when it states that "[t]he balance on the Plaintiff's account with Independent at the time [] he filed suit was $905.89." Doc. 25 at 4-5

letters again to Equifax and Trans Union disputing the inaccurate reporting by Independent Bank and notifying the agencies of his dispute with the bank. *Id*. at 3 ¶ 14. However, Flanigan contends that Equifax and Trans Union failed to properly investigate and remove the inaccurate reporting of his loan. *Id*. at 3-4 ¶¶ 14–24.

As a result, Flanigan filed this lawsuit against Independent Bank,[3] alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*. (Count I), and state law claims for defamation (Count II), invasion of privacy (Count III), reckless, malicious, willful and/or intentional conduct (Count IV), recklessness in hiring supervising, and/or training (Count V), negligent, reckless, wanton, malicious and/or intentional conduct in the wrongful force placing of insurance on the plaintiff's account (Count VI), unjust enrichment in the wrongful force placing of insurance on the plaintiff's account (Count VII), and fraud in the wrongful force placing of insurance on the plaintiff's account (Count VIII). Doc. 6. Thereafter, Independent Bank moved to stay this case and to compel Flanigan to arbitrate his claims pursuant to the parties' loan agreement. Doc. 13.

---

[3]Flanigan initially also sued Trans Union and Equifax. *See* docs. 1 and 6. However, Flanigan subsequently moved to dismiss all claims against Equifax and Trans Union in this action. Docs. 27 and 31. The court granted the motions. Docs. 30 and 32.

## III.    ANALYSIS

The arbitration addendum between Flanigan and Independent Bank states:

> Borrower . . . hereby acknowledges and agrees that all disputes
> between Borrower and Lender shall be resolved by **BINDING
> ARBITRATION IN LIEU OF ALL RIGHTS TO A JURY
> TRIAL**. . . .
>
> 1.    **Arbitration**. Upon written demand for arbitration (the
>         "Demand") made by Borrow or Lender, **all disputes claims, or
>         controversies for less than $100,000**, whether based in
>         contract, tort or otherwise that arise from or relate to this
>         contract or the relationships from this contract, shall be settled
>         by binding arbitration in accordance with the Federal
>         Arbitration Act (the "FAA") of the American Arbitration
>         Association (the "AAA").

Doc. 13-1 at 7 (some emphasis added).  At issue here is Flanigan's contention that

his claims fall outside the arbitration clause since "[t]he amount in controversy for

these eight (8) counts well exceeds the $100,000 contemplated by the arbitration

contract."  Doc. 23 at 1–2.  Consistent with his contention, Flanigan moved to

amend his complaint to "place[] an amount in controversy in the *ad damnum*

clause of each count" of the complaint—specifically, $125,000 for each count.

Doc. 24. In other words, although this dispute stems from a $16,000 loan he

borrowed from Independent Bank and Independent Bank's contentions that he still

owes a balance of $905.89, Flanigan maintains that he is not subject to the

arbitration agreement because he is seeking over $100,000 in damages. To no surprise, Independent Bank disagrees and contends, in part, that because "[t]he balance on the Plaintiff's account with Independent at the time [] he filed suit was $905.89[,]" "[e]ven if the Court were to find that Independent was culpable for any wrongdoing, the Plaintiff would have to be awarded punitive damages in an amount more than 100 times the balance of the note in order to reach that threshold . . . and there are no circumstances where such an award would be feasible." Doc. 25 at 4–5 (citing *BMW v. Gore*, 517 U.S. 559 (1996)).

The court agrees with Independent Bank. Flanigan is obviously free to ask for—and may in fact receive—$125,000 for each of his eight counts. Nonetheless, based on the facts before this court, allowing Flanigan to use the amount he seeks as the figure to determine the amount in controversy would essentially give Flanigan the unilateral right to nullify a valid agreement by simply stating that he is suing for an amount that exceeds the limit outlined in the agreement. Such a result would be contrary to the parties' intent because, after all, if they intended for one party to have the unfettered right to define the amount in controversy, then they would have seen no need to place a monetary limit on the arbitration agreement. *See Sullivan, Long & Hagerty v. Southern Elec. Generating Co.*, 667

So. 2d 722, 725 (Ala. 1995) ("Terms of a written instrument should be construed *in pari materia* and a construction adopted that gives effect to all terms used."). Indeed, just as "a party may not avoid broad language in an arbitration clause by attempting to cast its complaint in tort rather than contract," *ECS, Inc. v. Goff Group, Inc.*, 880 So. 2d 1140, 1147 (Ala. 2003) (quotation marks and citations omitted), similarly, a party may not invoke limiting language in an arbitration clause by claiming more than what is reasonably in dispute.

Thus, the better and logical interpretation of the agreement is that the cap applies to an amount that is *reasonably* in dispute rather than the amount claimed. In that respect, Flanigan alleges that he "was forced to pay sums he did not owe, [his] account was improperly accounted, [his] credit was and is damaged[, he] suffered contempt, ridicule and/or financial injury[, he] has suffered a loss of credit, insurance, and/or other business dealings of varying types[,] and [he] suffered actual damages for worry, shame, humiliation, loss of sleep, anxiety, nervousness, physical sickness, physical and mental suffering, pain, and anguish." Doc. 24-1 ¶¶ 56, 61, 64, 72, 78, 85, 89, 97.  However, notwithstanding these contentions, the only concrete amount of damages Flanigan alleges is the $905.89 he "was forced to pay." Doc. 24-1 ¶ 78. It appears that the other alleged injuries

8

amount to no more than nominal damages. Further, it is unlikely that punitive damages of 100 times the compensatory damages would be reasonable in this case. *See State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) ("We decline again to impose a bright-line ratio which a punitive damages award cannot exceed. Our jurisprudence and the principles it has now established demonstrate, however, that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."). Accordingly, based on the facts before this court, the amount reasonably in dispute does not exceed the $100,000.00 cap.

## IV.  CONCLUSION

In sum, consistent with the plain terms of the arbitration clause, Independent Bank's motions to stay the case and to compel arbitration are **GRANTED**. The parties are **DIRECTED** to submit this dispute to arbitration in the manner provided for in the arbitration clause and notify the court when arbitration is completed. While the Clerk of this court is **DIRECTED** to close this action, the court retains jurisdiction and the parties may request reinstatement at any time that they require the court's intervention.

**DONE** this 18th day of February, 2014.

**ABDUL K. KALLON**
**UNITED STATES DISTRICT JUDGE**